Filed 4/17/13  In re J.V. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| In re J.V., a Person Coming Under the Juvenile Court Law. | B242841 |
| _____ | (Los Angeles County Super. Ct. No. GJ29694) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | |
| J.V., | |
| Defendant and Appellant. | |
| _____ | |

APPEAL from an order of the Superior Court of Los Angeles County, Robin Miller Sloan, Judge.  Modified and affirmed.

Gerald Peters, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Eric E. Reynolds and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Minor J.V. appeals from an order sustaining a petition under Welfare and Institutions Code section 602[1] and placing him home on probation. He argues the juvenile court erred in admitting his statements to police. We find no prejudicial error. We strike the maximum period of incarceration and affirm the order as modified.

## FACTUAL AND PROCEDURAL SUMMARY

In March 2012, J.V., who was almost 18 years old, was involved in a traffic accident on Los Robles Avenue in Pasadena. The PT Cruiser belonging to J.V.'s father struck a parked Honda van. J.V. and his three companions ran from the accident scene.

The section 602 petition alleged J.V. committed the misdemeanor offenses of driving under the influence of alcohol and fleeing the scene of an accident (hit and run). (Veh. Code, §§ 20002, subd. (a), 23152, subd. (a).) At the adjudication hearing, two police officers and three civilians testified for the prosecution, and one of J.V.'s companions testified for the defense.

Prosecution witness Cesar Leon testified he was inside a house, two doors down on the same street where the accident occurred. After hearing a crash, he went out and took cell phone pictures of the two cars and of two individuals running away. He identified J.V. as one of the two individuals, and claimed to have seen him go around the PT Cruiser and help out a young woman sitting in the front passenger seat. Leon testified he did not see J.V. exit the PT Cruiser, but saw him fall down two or three times while trying to go around it.

Prosecution witness Anthony Villa Gomez was in his car three doors away from the accident. He heard the crash and saw four individuals get out of the PT Cruiser. Two of them ran south, and two, including J.V., ran north. Gomez said J.V. staggered and fell down twice before he ran away. He also testified J.V. got out of the driver's side of the PT Cruiser. When asked whether he saw which door J.V. used to exit, Gomez said he

---

[1] Subsequent references are to the Welfare and Institutions Code, unless otherwise indicated.

2

"assumed" J.V. "was coming out of the driver's side, because the passenger on the driver's side headed south" along with "the female on the passenger side"; "the other male . . . on the passenger, in the front side" headed north with J.V.

Kathryn Uchida, the daughter of the owners of the Honda van, testified she heard the crash from inside the house, went outside, and saw a male passenger in the front seat grab a backpack. She went inside the house to call 911 and did not see anything else.

The police report indicated witnesses had seen individuals running away from the accident scene. No witness had identified any of the individuals as exiting through the driver's door or falling down at the scene of the accident, and no such statements were included in the police report.

Officer Ivis Moran, who responded to the accident, testified he saw J.V. walking on the sidewalk near Los Robles and California Avenues. His clothes were dirty and torn and his gait was unsteady. Officer Moran suspected J.V. had been involved in the accident. The officer pulled up next to J.V. and asked him to stop, but J.V. continued walking. Officer Moran then got out of the car and told J.V. he was not in trouble. The officer wanted to find out if J.V. was well since he had blood on his forehead. He also exhibited symptoms of intoxication. J.V. did not respond when officer Moran asked if he was all right. When asked what his name was, J.V. was able to tell the officer his middle name. When asked if he had been in a car accident, J.V. said, "'Yeah.'" The officer then asked if J.V. had been driving, and J.V. again said, "'Yeah.'" J.V. continued walking after Officer Moran told him they should go back to the accident scene, and he tried to pull away when the officer took him by the arm. At that point, Officer Moran handcuffed J.V. and brought him back to the scene of the accident, where he handed him over to Officer Donald Sevesind.

Officer Sevesind testified he saw J.V. sitting in Officer Moran's patrol car with eyes closed and head tilted back. It took several seconds to rouse him. He was initially unable to respond to questions, but eventually told the officer his first name. Officer

Sevesind read J.V. his *Miranda*[2] rights. During the reading, J.V. kept slowly closing and opening his eyes, and did not respond when the officer asked him if he understood each individual right. After reading the *Miranda* rights, the officer asked J.V. if he understood the rights he had just read, and J.V. responded he did. In the subsequent interview, J.V. did not answer some questions and gave incoherent responses to others. He initially admitted he had been driving, then said he had not been driving. J.V. also said he parked the car and ran out, and did not know what happened. When asked to submit to a blood or breath test, J.V. took several seconds to respond, then said he did not need to because he could "'get zeroes.'" But he admitted drinking seven shots of vodka.

C.Q., who also was in the PT Cruiser at the time of the accident, testified for the defense. He said J.V. had given him a ride to school that day, parked the car, and gone to school, taking the car keys with him. In J.V.'s absence, C.Q. and two others started drinking vodka in the back seat. J.V. later joined them, getting into the front passenger seat. C.Q. testified that at some point J.V. gave him the car keys, and C.Q. drove everyone to a park, then crashed into the Honda van on the way back to the school. C.Q. stated all occupants of the PT Cruiser ran in the same direction after the accident. According to C.Q., at the time of the accident, everyone else was in the back seat, with J.V. sitting directly behind the driver's seat. But C.Q. admitted he told the investigating officer he was sitting in the back seat at the time of the accident and did not remember who was driving.

Defense counsel objected to the testimony about J.V.'s statements to Officer Moran on the ground that J.V. had not been read his *Miranda* rights, and she objected to both officers' testimony about J.V.'s statements on the ground that J.V. was physically incapable of validly waiving his *Miranda* rights, due to his intoxication. The court overruled the *Miranda* objections and denied the motion to dismiss, telling defense counsel, "I think you have an argument, I will give them their due weight in light of all the evidence that I have heard."

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

The court found credible the testimony of the civilian witnesses "who didn't really have an axe to grind, and admittedly did not see who was driving, but were clear about the positions of the persons in the car." The court also relied on J.V.'s admission to Officer Moran that he had been involved in an accident and had been driving. Based on this evidence, the court found the allegations against J.V. proven beyond a reasonable doubt and sustained the section 602 petition. The court did not rely on J.V.'s statements to Officer Sevesind, agreeing with the defense that Officer Sevesind's reporting was "not as clear as to the state of the minor."

J.V. was placed home on probation for six months, with a maximum term of confinement of one year, two months. He timely appealed.

## DISCUSSION

### I

Before a defendant's custodial statements may be admitted against him at trial, they must be shown to have been made voluntarily after he was advised of his rights to remain silent and to have an attorney present. (*Miranda*, *supra*, 384 U.S. 436, 475.) J.V. argues his statements to officers Moran and Sevesind were custodial and involuntary due to his intoxication, and the juvenile court failed to determine his capacity to make voluntary statements before admitting them into evidence.

Whether a suspect's statements were obtained in violation of *Miranda*, *supra*, 384 U.S. 436, presents a mixed question of fact and law, which we review independently while deferring to the lower court's resolution of disputed facts if supported by substantial evidence. (*People v. Weaver* (2001) 26 Cal.4th 876, 918.) We conclude that J.V.'s statements to Officer Moran were noncustodial and therefore not obtained in violation of *Miranda*, *supra*, 384 U.S. 436.

"A suspect is in custody when a reasonable person in the suspect's position would feel that his 'freedom of action is curtailed to a "degree associated with formal arrest." [Citation.]' [Citation.]" (*People v. Bejasa* (2012) 205 Cal.App.4th 26, 35.) Where the suspect was not formally arrested at the time he made the challenged statements to police,

5

relevant factors include the length of the detention, its location, the number of police officers involved, and the nature of the questioning. (*Id*. at p. 36.) The "term 'custody' generally does not include 'a temporary detention for investigation' where an officer detains a person to ask a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." (*People v. Farnam* (2002) 28 Cal.4th 107, 180.)

J.V.'s encounter with Officer Moran was brief and took place on a public street. Officer Moran told J.V. he was not in trouble and the officer was just checking on his well being. The officer did not physically restrain J.V. until after J.V. admitted he had been driving. This brief investigative inquiry was not a custodial interrogation even if the officer subjectively suspected J.V. was involved in the accident and detained him to obtain information confirming his suspicion. The officer's '"uncommunicated subjective impressions"' about J.V.'s custodial status are irrelevant. (*People v. Farnam*, *supra*, 28 Cal.4th at pp. 180–181.) Additionally, since J.V. continued walking both after the officer initially asked him to stop and after the officer told him they should go back to the accident scene, we cannot conclude that he reasonably believed "his freedom of action was being curtailed in any significant way." (*Id*. at p. 180.)

J.V. suggests his age is a relevant factor, citing *J.D.B. v. North Carolina* (2011) 564 U.S. ___, 131 S.Ct. 2394, 2402–2403. In that case, "a 13-year-old, seventh-grade student attending class . . . was removed from his classroom by a uniformed police officer, escorted to a closed-door conference room, and questioned by police for at least half an hour." (*Id*. at p. 2399.) The majority held that "so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer, its inclusion in the custody analysis is consistent with the objective nature of that test. This is not to say that a child's age will be a determinative, or even a significant, factor in every case." (*Id*. at p. 2406, fn. omitted.) The majority specifically noted that omitting a suspect's age was not unreasonable when the suspect '"was almost 18 years old at the time of his interview."' (*Ibid*., citing *Yarborough v. Alvarado* (2004) 541 U.S. 652, 669, O'Connor J., concurring.)

The record does not indicate that when Officer Moran talked to J.V. on the street, he knew or had reason to know J.V. was a minor. At the adjudication, the officer was asked only whether J.V. matched the description of "a male Hispanic with some specific clothing." The record also indicates that, at the time of the accident, J.V. was six months short of his eighteenth birthday. *J.D.B. v. North Carolina*, *supra*, 564 U.S. ___, 131 S.Ct. 2394, does not require that we conclude J.V.'s age is a significant factor under the circumstances.

J.V. also argues his statements to Officer Moran were involuntary due to his intoxication, and the juvenile court violated his right to due process by admitting these statements without determining whether J.V. had the capacity to make them. We are not persuaded. The defense objections were that J.V. should have been read his *Miranda* rights and that he did not have the capacity to understand or waive them. In ruling on a *Miranda* objection, the trial court need not make formal findings so long as its ruling is reflected in the record with "'"unmistakable clarity."'" (*People v. Smithson* (2000) 79 Cal.App.4th 480, 494.) Here, the juvenile court repeatedly overruled the defense's *Miranda* objections to Officer Moran's testimony.

As we have discussed, the protections of *Miranda*, *supra*, 384 U.S. 436, apply only when a defendant is subjected to *custodial* interrogation, and J.V. was not in police custody at the time he made the statements to Officer Moran. Additionally, while a suspect's intoxication is a significant factor in determining whether a confession was involuntary, it is not by itself determinative. (*People v. Perdomo* (2007) 147 Cal.App.4th 605, 617.) Rather, "[a] finding of coercive police activity is a prerequisite to a finding that a confession was involuntary under the federal and state Constitutions. [Citations]." (*People v. Maury* (2003) 30 Cal.4th 342, 404; compare *Mincey v. Arizona* (1978) 437 U.S. 385, 401 [relentless questioning of wounded man going in and out of consciousness resulted in involuntary statements] with *People v. Perdomo*, at pp. 617–618 [statements elicited after 20-minute interview of suspect under influence of pain medication in hospital were voluntary where officers did not exert psychological or physical pressure].) Here, although J.V. was apparently intoxicated, there is no evidence

7

that he was going in and out of consciousness at the time of his brief street encounter with Officer Moran. During this encounter, J.V. was able to walk, albeit unsteadily, and tell the officer his name. There is no evidence that the officer did anything besides asking J.V. a few brief questions or that he used any coercive tactics to elicit J.V.'s responses.

The court did not err in overruling the *Miranda* objections to Officer Moran's testimony, and J.V.'s statements to that officer were admissible evidence. J.V. does not contend that his statements to Officer Moran were insufficient to support the adjudication. Since the juvenile court expressly stated it did not rely on J.V.'s statements to Officer Sevesind, we need not review their admissibility. We also do not address J.V.'s contention that the petition could not have been sustained solely on the civil witnesses' testimony.

## II

Section 726, subdivision (c), which requires the juvenile court to specify a maximum term of confinement not exceeding the time of confinement allowable for an adult convicted of the same offense, does not apply when a minor remains in the physical custody of his or her parents. (*In re Matthew A*. (2008) 165 Cal.App.4th 537, 541; *In re Ali A*. (2006) 139 Cal.App.4th 569, 573–574.) Relying on *In re Ali A*., respondent argues that the inclusion of a maximum confinement term in the disposition order has no legal effect and need not be stricken. (*Id.* at p. 574, fn. 2.) The better practice is to strike the unauthorized term to provide J.V. with a legally correct disposition order. (*In re Matthew A*., at p. 541.)

8

## DISPOSITION

The maximum confinement term is stricken from the July 17, 2012 order.  In all other respects, the order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


SUZUKAWA, J.